Please rise, this court is now in session. Please be seated. Case number 315-0256, People of the State of Illinois, an affidavit by John Duffy v. Spencer Flier, comment by Aaron Sastry. Mr. Sastry. May it please the court. Aaron Sostock for Appellant Spencer Flier. In this case, the trial court erred in failing to give a lesser-included jury instruction of failing to leave the scene of an accident. Mr. Flier is entitled to a lesser-included instruction if the charging instrument describes the lesser-included offense and the evidence at trial would permit a rational jury to convict him of the lesser offense in an acquittal of the greater. Here, the charging instrument describes the lesser offense. 11-401A, failure to comply, a person fails to comply if the driver is involved in an accident involving death or personal injury and then they leave the scene of an accident without providing their information or rendering aid. 11-401B is violated if they fail to comply with A and then also fail to report the accident within 30 minutes. Here, that's the exact element that is at issue, whether or not Mr. Flier reported the accident within 30 minutes. The charging instrument in this case alleged that Mr. Flier knowingly failed to stop at the scene of an accident and therefore failed to fulfill the reporting requirements within 30 minutes after said accident. Thus, it's a broad outline of 11-401A, the lesser-included offense. Additionally, the evidence at trial would have permitted a rational jury to convict Mr. Flier of the lesser offense in an acquittal of the greater offense. Only slight evidence of the lesser-included offense is required in order to give the jury instruction. The judge's role is not to weigh the evidence or assess the witness's credibility, but to just give the jury instruction if there is some evidence to support it. Here, the officer testimony only established that Mr. Flier did not speak to either officer personally. It did not establish that Mr. Flier did not report the accident within 30 minutes. First, Officer Briggs was the responding officer, and he only testified that Mr. Flier never approached him personally at the scene. Then, Detective Smith was assigned two days after the accident to investigate. Detective Smith testified that he did not come in contact with Mr. Flier during his investigation and that no one named Mr. Flier ever gave him information concerning the incident. Both of these officers testified that Mr. Flier did not personally provide them with information about the accident. That does not preclude the fact that Mr. Flier could have reported the accident within 30 minutes by phoning either the Sheriff's Office or the City of Norwood Police Department, that was also a close-by department, and provide information to any other officer or sheriff. In addition, Ms. Diaz, who was the neighbor, saw Mr. Flier on the telephone, which he was talking to his sister for a few seconds in a very short conversation, but in the 30-minute time, he could have also called and reported the accident to law enforcement. Because the judge failed to give this instruction, the jury was never given this third option. The judge weighed the evidence when deciding whether or not to give the instruction. The judge said that Detective Smith had not learned of any information that Spencer Flier had reported the accident, and the judge also determined that as the protector or sentry of the case, he had not received any information. That is not, in fact, what Detective Smith testified. He actually only testified that no one named Spencer Flier ever gave him information personally. Those are very different things. Detective Smith did not actually testify about any information that was given to him by other officers or even contained in a police report. Thus, the jury could have concluded that Mr. Flier did report the accident to another officer or even another police department within 30 minutes, but they were not given that option to do so when the court refused the jury instruction. As a result, this was a trial court error, and an irrational jury could have found that the state failed to prove Mr. Flier did not report the accident within 30 minutes, and they could have convicted him of the lesser offense of just leaving the scene of the accident that involved death. If the court has no further questions about this issue, I will now continue with the two sentencing issues. The minimum sentence in this case of four years would have been a sufficient sentence, and the reasons that the trial court gave to increase Mr. Flier's sentence were either inherent in the offense or not supported by the record. First, the court relied on the fact of the victim's death in increasing Mr. Flier's sentence. The court said, on the pavement outside your yard, two people were killed, and you killed them. Shame on you. In Pupil v. Salvador, the Illinois Supreme Court clearly held that the death of a victim, if it's implicit in the offense, cannot be considered an aggravation. Here are the trial court's words blamed and reproached Mr. Flier for the fact of the death of the victims. The court's words were not directed at the degree or gravity of Mr. Flier's conduct, but only about the fact of the victim's death. Next, the court also found an aggravating factor that Mr. Flier caused or threatened serious harm. With regard to this factor, the court said it threatened serious harm because people had to figure out what happened here. This presumably means that the police had to investigate the accident. That is not a harm. The police's job is to investigate an accident, and the nature of this offense, failing to report, automatically means that there is going to be some investigation. It is not a harm to the police or to the victims that investigation had to be done in order to figure out what happened. Next, the court also relied on speculative facts that were not supported by the evidence in determining Mr. Flier's sentence. Right before sentencing Mr. Flier, the court relied on the fact that Mr. Flier may have soapered up and called his friends prior to, after the accident, and that's why he didn't report it. There was no evidence of this in the record, that Mr. Flier had been drinking at all. And in fact, counsel pointed out the fact that there was no evidence of this, and yet the court still said that he could not rule out that Mr. Flier could have been hiding something. Additionally, in this case, there was an abundance of mitigating evidence, some of which the court did not fully consider, and some of which the court misconstrued. For example, Mr. Flier was employed at Henry Construction for a year and a half prior to the accident. He was a part-time employee, and his employer gave him an extremely favorable review when consulted about this after the case. The employer said that he was respected, welcome at any job site, and rarely called off work. Yet, the court said that this not-working business was disturbing to it. However, Mr. Flier was working, and the court's insinuation that Mr. Flier wasn't working shows that he did not fully consider the mitigating evidence in this case. Additionally, Mr. Flier expressed his desire to complete his GED and find a steady job. However, the court then said that he had plenty of opportunities to do so and be meaningful, and said that Mr. Flier lacked a purpose in life.  Mr. Flier was only 24 years old at the time of the accident, and he did have a job, albeit it was not full-time, but he was working, and he showed up to work whenever he was supposed to, as his employer had told the court. Additionally, the court relied on the deterrence factor as a reason for increasing the penalty. However, the legislature has ruled that the minimum four-year sentence would be sufficient to punish Mr. Flier in this case, and the reasons that the court relied on for increasing Mr. Flier's sentence were either inherent in the offense or they were not supported by the record, as was discussed. Additionally, Mr. Flier had no significant criminal history. He had two misdemeanors that both occurred when he was a teenager, 17 or 18 years old, and he had two ordinance violations. When the court discussed his significant criminal history, it said he had no significant criminal history, but then went on to discuss his school records and his disciplinary history in school, which are very different things, and it wasn't clear whether the court was actually relying on his criminal history or relying on his school history and conflating the two. Finally, Mr. Flier had a difficult family life, and his parents were divorced, and he had recently lost his brother to suicide prior to the accident. However, his family was very supportive, and his father testified at a sentencing hearing and said that he hoped Mr. Flier would go on to continuous education and get his GED and get a full-time job and get counseling. Finally, the PSI and the court said that he could have completed intensive probation, yet the court's reasons for not giving Mr. Flier intensive probation and increasing his sentence well beyond the minimum were not supported by the record here. As a result, Mr. Flier's sentence should be either reduced or remanded for resentencing. Does the court have any questions? I guess not. Thank you. Thank you, Ms. Huffman. Ms. Stephanie? Good morning, Your Honors. Counsel, as to the sentencing issues, I think the briefs have adequately covered the allegations that defense counsel has made. I don't think there is any factor inherent in the offense that was used by the trial judge here, and it wasn't the trial judge who got into a discussion about intoxication. It was defense counsel. And what trial judge said was, I guess we'll never know why this accident happened and why he didn't report it, but the evidence is that that's the case. The issue on whether or not there's a lesser-included offense here, the statute defines three separate offenses. Now, this idea that he's entitled to a lesser-included offense because maybe he reported it, well, isn't that in the nature of an affirmative defense if he did, but he didn't? There's no evidence that he reported this accident. The accident was reported by another witness who saw the defendant's car make a turn and hit a motorcycle, knock two people off, and kill them. That's the evidence. This defendant called nobody but his sister. The neighbor across the street saw the defendant pull his car into the driveway. He was outside. He was on the phone. But we know from the police department nobody there talked to him. That's not who he called. So the idea that he's entitled to a lesser-included offense because maybe he reported it is preposterous. The only offense charged here was leaving the scene of an accident, failure to report in 30 minutes, and causing death, which he did. The evidence proved that. He presented no evidence at trial. The evidence of his guilt is overwhelming. And the trial judge's decision that he was not entitled to a lesser-included offense because it was not based upon the evidence is not an abuse of his discretion. Does the court have any questions on any of these issues? Yes, ma'am. Thank you, Your Honor. The state relies on the fact that Mr. Flier did not present any evidence. Well, it's not Mr. Flier's burden to present any evidence. Whether or not Mr. Flier left the scene of an accident and then failed to report it within 30 minutes, that's the state's burden to prove, whether or not Mr. Flier left the scene and failed to report the accident. The state had the burden to prove beyond a reasonable doubt that final element of whether or not Mr. Flier reported it within 30 minutes. The state only presented two witnesses, both of whom could only testify as to their lack of personal interaction with Mr. Flier. They did not present any evidence from the police department themselves or even about the lack of records from the police department or any phone records or anything to show that Mr. Flier did not make a phone call to the police department or talk to another officer. And it was not Mr. Flier's burden to present that evidence. It was the state's burden. And because the state did not present a full picture of whether Mr. Flier had reported within 30 minutes, he was entitled to that jury instruction. The fact that only two officers testified shows that a jury could have found, based on their testimony, that Mr. Flier could have reported within 30 minutes. They might not have been convinced beyond a reasonable doubt that Mr. Flier failed to report within 30 minutes, but they weren't given the opportunity to make that finding because the trial court refused the jury instruction. Additionally, the court said that there was testimony from the police department. Well, there wasn't. We only had two individual officers from the sheriff's department. There was also a very nearby police department, and we had no information from that police department about whether or not Mr. Flier reported anything to them or whether there was any communication between the two departments. In sum, it was not Mr. Flier's burden to present any evidence about his reporting within 30 minutes. It was the state's burden, and their burden left room for there to be some evidence of the fact that he did report within 30 minutes. The jury could have found that, but they were not given the opportunity to do so. Additionally, just regarding the sentencing issue, the state relied on the fact that counsel brought up whether or not there was intoxication. Counsel brought it up in the context of saying that there was no evidence of this. Counsel was not asking the court to consider whether there was intoxication. He was pointing out the fact that there was no evidence of that in this case, and he was basically asking the court not to consider intoxication when making its ruling as to sentencing. Yet, right before the court made its finding, it said, I cannot conclude that you had no underlying purpose when you fled to your home. Maybe you were scared. I cannot conclude that there was not some other underlying purpose. Only you will know. That was what the court said immediately before sentencing Mr. Flier. The court appeared to be relying on the fact that there was some other reason that Mr. Flier did not report within 30 minutes, and he had previously discussed whether or not Mr. Flier was calling friends or whether Mr. Flier was sobering up. Those things were not supported by the record, and the court did, in fact, rely on them at sentencing. And if the court has no further questions. Thank you. Thank you, Mr. Feigl. Thank you both for your arguments today. I will take this matter under advisement, the fact that you have given this decision within a short period. We will now take a short recess for the panel discussion. Please rise. Court is at recess.